UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELIZABETH I.,[1]

                              Plaintiff                    DECISION and ORDER

-vs-                                                       6:23-CV-6658-CJS

COMMISSIONER OF SOCIAL
SECURITY,
                              Defendant.
_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant")

which denied the application of Plaintiff for Supplemental Security Income ("SSI")

benefits.   Plaintiff maintains that such determination is affected by errors of law and not

supported by substantial evidence, and, in particular, that the finding by the Administrative

Law Judge ("ALJ") that Plaintiff's irritable bowel syndrome ("IBS") is not a severe

impairment was the result of the ALJ's erroneous evaluation of the medical opinion

evidence.   Now before the Court are Plaintiff's motion for judgment on the pleadings

(ECF No. 6), and Defendant's cross-motion for the same relief (ECF No. 11).   For

reasons discussed below, Plaintiff's application is denied, Defendant's application is

granted, and this action is dismissed.

_____

[1]  The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."   20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v.*

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.  In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).  Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

---

*Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)]". Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review— even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original).

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec*., No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the

Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'— that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying the substantial-evidence standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).   "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).   "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

When considering whether a particular finding or decision is supported by substantial evidence, a court may not rely on *post hoc* rationalizations offered by the Commissioner, but may rely on evidence that was evidently considered by the ALJ even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id*. *See also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ....")."); *Banyai v. Berryhill*, 767 F. App'x at 177 ("An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered."); *see also*, *Loni S. v. Comm'r of Soc. Sec*., No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations

omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.').").

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action, and, consequently, the Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.

Briefly, on October 30, 2020, Plaintiff applied for SSI benefits claiming to have become disabled on October 1, 2019, due to "high blood pressure, vitamin deficiency, IBS, kidney issues." Tr. 72. Plaintiff's claim was denied at the initial level, and in connection therewith, on March 11, 2021, agency review physician V. Baronos, M.D. ("Baronos") reviewed the medical evidence and determined that Plaintiff had no severe physical impairment. Tr. 75. Particularly as to Plaintiff's IBS, Baronos observed that the medical treatment records indicated that such condition was "managed" and "well controlled" by not eating late at night and avoiding dairy products. Tr. 75 ("IBS managed by not eating late at night, using Lactaid for dairy products. . . . IBS was deemed well controlled.").

Plaintiff's claim was again denied on reconsideration, and in that regard, on July 23, 2021, agency review physician C. Krist, DO ("Krist") reviewed the medical record, which had been supplemented with additional records post-dating Baronos' review, Tr. 81-82, and agreed with Baronos that Plaintiff's impairments were non-severe, observing in pertinent part:

3/24/21 telemed [follow up] f/up for IBS reports the Clmt had a 3 lb desirable weight loss since last visit. She is following up dietary guidance for IBS. 5/12/21 [telemed follow-up] Claimant [complaining of] c/o abdominal tenderness and fullness. Clmt's IBS symptoms are reportedly mixed diarrhea & constipation; Diet controlled, avoids trigger foods such as chesseburger/greasy food (diarrhea), broccoli (constipation). Reportedly had one episode of fecal incontinence a while ago, though none recently.

*** 

6/9/21 CT Abdomen & pelvis was unremarkable. There is colonic diverticulosis without acute diverticulitis.

ADLs: Clmt resides with her daughter. Clmt is independent in her self-grooming. She prepares her meals, does some laundry and light house chores. The clmt states she can't lift heavy, [due to] d/t having only one kidney. She also stated that [due to] her IBS she needs a bathroom more often[.]

Based on the totality of the [medical record] the claimant's physical impairments do not more than minimally affect their [sic] daily functioning and are therefore considered to be non-severe.

Tr. 84.

On September 1, 2022, the ALJ conducted a hearing, at which Plaintiff and a vocational expert ("VE") testified. Plaintiff's counsel indicated that he had requested a medical opinion from Plaintiff's treating physician, and the ALJ agreed to leave the record open to await such opinion or to obtain a consultative examination if it turned out that Plaintiff's physician declined to provide an opinion. Despite four requests, Plaintiff's physician declined to provide an opinion, Tr. 288, and the ALJ consequently arranged a consultative internal medicine examination by Susan Dantoni, M.D. ("Dantoni").

On October 6, 2022, Dantoni performed a consultative internal medicine exam and issued both a narrative report and a check-the-box functional evaluation. Tr. 474-483.

8

Dantoni's narrative report indicated that Plaintiff's "chief complaints" were that her IBS caused her to "need to use the bathroom frequently"; that she had "alternating constipation and diarrhea"; that when she had constipation she was "sometimes in the bathroom for up to two hours"; that she had "pain in her belly, especially on the left side"; and that when she stood "for more than two to three hours at a time she [felt] pressure in her vagina." Tr. 474.    However, the only positive finding from Dantoni's physical examination of Plaintiff was the following: "Her abdomen is slightly distended and slightly tender in the lower quadrant on both the left and the right side." Tr. 476.    Otherwise, Dantoni noted, for example, normal musculoskeletal and neurologic findings, including full range of motion and full strength in the hands and extremities. Tr. 476.    Dantoni's "medical source statement" was as follows:

> There are no physical limitations that I could identify based upon today's physical exam.   The claimant may experience schedule interruptions due to her irritable bowel syndrome symptoms which keep her using the bathroom quite frequently and for long periods of time, and she may also experience schedule interruptions due to the diverticulitis that causes her some abdominal pain.

Tr. 480-481.

As for Dantoni's check-the-box evaluation, she indicated that Plaintiff could lift and carry up to 50 pounds occasionally, up to 20 pounds frequently, and up to ten pounds continuously. Tr. 478.   Dantoni added, however, that, "Claimant is older and would not be able to lift the above amounts easily." Tr.   478.   Dantoni further indicated that Plaintiff could sit for up to two hours at a time, and for up to four hours in a workday; stand for thirty minutes at a time and up to two hours in a workday; and walk for thirty minutes at a

time and up to two hours in a workday. Tr. 479.   Dantoni also stated that Plaintiff could

"continuously" use her hands and feet, and perform postural activities. Tr. 480-481.

When asked to explain the basis for her findings on the check-the-box report, Dantoni

wrote, "See PE," apparently referring the reader to her narrative report. Tr. 478, 480-482.

On November 10, 2022, the ALJ issued a decision finding that Plaintiff was not

disabled at any time between the application date and the date of the decision.   The ALJ

analyzed the claim using the five-step sequential evaluation, but found, at step two, that

Plaintiff did not have a severe impairment or combination of impairments.   In this regard,

the ALJ summarized Plaintiff's complaints in pertinent part as follows:

> The claimant . . . alleged that she suffers from multiple impairments that
> render her disabled under the grid rules because she is over fifty years of
> age and reportedly limited to sedentary work.   The claimant also testified
> that she does not believe she can work a full-time job because she has a
> very sensitive stomach and can be in the bathroom for up to two hours or
> on a more frequent basis when she has diarrhea.   She reported that she
> can only stand and walk for no more than four hours because of the pain in
> her stomach.   The claimant described having an average of 2 'bad days'
> per week.   She stated that her pain goes away if she sits.   She is currently
> experiencing 1 bowel movement per day.   She also testified that she is
> unable to lift more than twenty pounds or she experiences back pain.   She
> also testified to having some anxiety and that she was still mourning the
> death of her brother and father prior to that.   However, she testified that
> she does not need to take any medication or seek mental health treatment.

Tr. 18.

The ALJ found, however, that Plaintiff's complaints were not entirely consistent

with the record as a whole.   For example, with regard to Plaintiff's IBS, the ALJ observed

that the treatment records indicated that the condition "was described as being managed

by eating habits, such as by not eating late and using lactose free products, such as

Lactaid." Tr. 19.   The ALJ further stated:

> The claimant told her treating source that she has diarrhea more than
> constipation and only gets constipated if something really upsets her
> stomach, which she identified as specific identifiable trigger foods.
> However, she was not on any restricted diet nor was she taking nutritional
> supplements.   Treatment records only documented that milk causes
> diarrhea.   In follow-up, IBS was again described as diet-controlled and that
> she has not had an episode of fecal incontinence recently and the last time
> was 'a while ago.'   June 2021 CT of abdomen and pelvis was
> unremarkable.   There was colonic diverticulosis without acute diverticulitis.
> Additionally, treatment records failed to evidence specific details regarding
> frequency of symptoms other than the earlier statement on one morning
> bowel movement.   In September 2021, diarrhea is documented as
> resolved and the claimant denied recent abdominal pain, cramping or
> distension and having no recent fecal urgency.   Only dietary measures
> have been recommended, as she has been advised to follow high fiber diet.

Tr. 19-20.   The ALJ observed that the treatment notes were inconsistent with Plaintiff's

statements to Dantoni, but consistent with Dantoni's lack of positive findings:

> The reports expressed to consultative examiner, such as that of being in the
> bathroom for up to two hours, is not duplicated or corroborated in treating
> source records.   Comparatively, treating source records did not identify
> reports regarding frequency or intensity of symptoms.   The claimant has
> stated that she does not experience pain and subjective reports of pain are
> rarely documented in the office notes.   Thus, the statements made to
> consultative examiner are not consistent with the totality of the documented
> records.   Moreso, it is the absence of positive clinical evidence outlined by
> consultative examiner that is consistent with the overall record.

Tr. 20.

The ALJ then discussed the medical opinion evidence, consisting of the opinions

of Dantoni, Baronos, and Krist, and found that Dantoni's opinion was "non-persuasive"

11

inasmuch as it was based on statements by Plaintiff that were not consistent with the treatment record, while the opinions of Baronos and Krist were "more persuasive" insofar as they were "thorough," consistent with each other, and "corroborated by the treatment records":

> The medical source statements offered from consultative examiner, Dr. Dantoni, are also non-persuasive.   Not only are there some internal inconsistencies, but the examining source appears to have relied heavily on the claimant's own reports and non the actual clinical evidence, or absence of.   For instance, Dr. Dantoni wrote in her report that she felt the claimant had no physical limitations, which is consistent with the documented findings and those of the treating source records.   Yet, Dr. Dantoni used a check-off form and documented a number of functional limitations. Moreso, Dr. Dantoni noted that the claimant is 'older' and would not be able to lift the above limits easily.   This is not a standard on which to bas[e] work-related restrictions.   There is simply no clinical objective basis for finding the limitations outlined by this source.   The accompanying report is more persuasive secondary to the unremarkable physical findings than is the assessment and opinion.   Even in this instance, the examining source did not observe the claimant's need for a restroom break during the examination, which indicates this portion of the opinion was based solely on the claimant's own reports.

> Instead, the opinions of the non-examining State Agency medical consultants are found to be more persuasive.   These two acceptable medical sources provided a thorough analysis of their review that accounts for the consistent opinions that the claimant does not have an impairment that more than minimally affects daily functioning for which they concluded there were no severe impairments.   As outlined above, this is corroborated by the treatment records.

Tr. 21.

In this action, Plaintiff contends that the ALJ erred in his step-two finding of non-severity, by "improperly evaluating" the persuasiveness of Dantoni's opinion. *See, e.g.*,

ECF No. 6-1 at p. 7 ("In assessing the Plaintiff's impairments, the ALJ improperly evaluated the opinion of Dr. Dantoni.  Had the ALJ properly considered this medical opinion, rather than relying solely on the non-examining doctor's opinions, there would have been, at minimum, a finding that Plaintiff's impairments are severe.").   More specifically, Plaintiff contends that it was improper for the ALJ to "take issue" with the alleged inconsistencies between Dantoni's two statements, "because the ALJ should have developed the record and/or recontacted Dr. Dantoni to resolve the internal inconsistencies." *Id*. at p. 10.   On this point, Plaintiff cites caselaw purportedly indicating that "where there are deficiencies in the record, an ALJ has an affirmative obligation to develop" the record, which "includes an affirmative duty to recontact a medical expert if an ALJ makes an initial determination that a medical expert's opinions are vague or appear to be inconsistent with [the expert's] examination notes." *Id*. at p. 11.

Plaintiff alternatively maintains that the ALJ erred by finding the opinions of the non-examining agency review physicians to be more persuasive than the opinion of Dantoni, who examined Plaintiff. *See, id*. at p. 13 ("The ALJ's decision is not supported by substantial evidence, because the ALJ improperly relied upon the opinions of the non-examining review physicians over the opinion of Dr. Dantoni, who had the benefit of actually examining Plaintiff."); *see also, id*. ("The ALJ erred in elevating the state agency review opinions over the examining consultant, because [Baronos and Krist] rendered their opinions without ever examining Plaintiff.")

Defendant disagrees and contends that the ALJ's decision is free of error under

the applicable regulations [6] and supported by substantial evidence.    Defendant maintains, rather, that Plaintiff's arguments reflect a disagreement with how the ALJ weighed the evidence.    Defendant asserts, for example, that "the ALJ [was] under no affirmative duty to recontact" Dantoni, since "[i]t [was] the ALJ's prerogative to resolve conflicts in the medical evidence and testimony, which is exactly what the ALJ did in this case, by his review of the physical examination findings of record, including Dr. Dantoni's own normal physical examination finding, and the other evidence of record, which included the opinion evidence and prior administrative medical findings of the State Agency consultants who also assessed nonsevere impairments." ECF No. 11-1 at p. 14.

Defendant further argues that Plaintiff is mistaken in claiming that the ALJ was required to find Dantoni's examining opinion more persuasive than the non-examining opinions from Baronos and Krist, since "the new regulations eliminate any semblance of a hierarchy of medical opinions and state that the agency does not defer to any medical opinions, even those from treating sources." *Id*. at 15.    Defendant insists, rather, that the ALJ properly "found the state agency consultants' findings 'more persuasive' than Dr. Dantoni's opinion because they supported their findings with a thorough analysis and review of the record, and their findings were consistent with the treatment notes of record." *Id*. at p. 16.

The Court has considered the parties' submissions and the relevant portions of administrative record.

---

[6] *See*, Defendant's Memo of Law, ECF No. 11-1 at p. 5 ("Because Plaintiff applied for disability benefits after March 27, 2017, the ALJ applied a revised set of regulations for evaluating the medical evidence that differs substantially from the prior regulations. 20 C.F.R. § 416.920c(a) (2017).")

DISCUSSION

Plaintiff maintains that the ALJ committed reversible error when evaluating the persuasiveness of the medical opinion evidence.   The basic legal principles concerning an ALJ's duty to evaluate the persuasiveness of medical opinions are clear:

> The two "most important factors" for determining the persuasiveness of medical opinions are consistency and supportability, and an ALJ is required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. § 416.920c(b)(2).
>
> With regard to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations provide that with regard to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. 416.920c(c)(2).
>
> ***
>
> An ALJ's failure to explain the supportability and consistency of the medical opinions in the record constitutes procedural error. *See Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019); *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, *2 (2d Cir. June 17, 2022) (summary order) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"). [7] However, "if 'a searching review of the record' assures [the court] 'that the substance of the [regulation] was not traversed,'" the court may affirm the Commissioner's decision. *Loucks*, 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96 (*quoting Halloran v. Barnhart*, 362 F.3d 28, 32 (2d

---

[7] The Second Circuit has indicated that an ALJ should provide some degree of explanation on these points beyond merely indicating, for example, that he or she finds that an opinion is, or is not, well supported or consistent with the record. *See, Loucks v. Kijakazi*, 2022 WL 2189293 at *2 ("Here, the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record.   . . .   [T]he ALJ did not address the opinion's supportability or explain how the opinion was consistent with the record, except to conclude that it was.") (emphasis added).

Cir. 2004))).

*Jason A. L. v. Comm'r of Soc. Sec.*, No. 521CV477FJSTWD, 2022 WL 4354363, at *2 (N.D.N.Y. Sept. 20, 2022).

Additionally, where an ALJ makes an RFC finding that conflicts with a medical opinion, the ALJ must explain why the conflicting opinion was not adopted, and in doing so the ALJ cannot ignore or mischaracterize evidence. *See*, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. *If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted*.") (emphasis added).

> Generally, an ALJ must reconcile discrepancies between his or her RFC assessment and medical source statements. SSR 96-8p, 1996 WL 374184, at *7; *see Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006). "If the ALJ's RFC finding conflicts with an opinion from a medical source, the ALJ 'must explain why the opinion was not adopted.'" *Williams v. Colvin*, No. 13-roncv-5431 (RLE), 2015 WL 1223789, at *8 (S.D.N.Y. Mar. 17, 2015) (quoting SSR 96-8p); *accord Garcia v. Berryhill*, No. 17-cv-10064 (BCM), 2018 WL 5961423, at *11 (S.D.N.Y. Nov. 14, 2018). While an "ALJ is not required to explicitly reconcile every conflicting shred of evidence in the record, an ALJ cannot simply selectively choose evidence in the record that supports [his] conclusions." *Williams*, 2015 WL 1223789, at *8 (cleaned up); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (an ALJ may not "arbitrarily substitute his own judgment for competent medical opinion").

*Lynch v. Commissioner*, No. 22CIV5620CSAEK, 2024 WL 728483, at *11 (S.D.N.Y. Feb. 21, 2024); *see also, Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 644 (2d Cir. 2020) ("The ALJ is obligated to consider "'all of the relevant medical and other evidence.'"

*Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010) (quoting 20 C.F.R. § 404.1545(a)(3)). An ALJ's failure to consider relevant evidence is grounds for remand. *See id*.; *see also Kohler v. Astrue*, 546 F.3d 260, 268-69 (2d Cir. 2008) (concluding that ALJ erred by tending to "overlook or mischaracterize" portions of evidence that supported disability finding).").

And, of course, an ALJ is not permitted to "cherry pick" evidence that supports his RFC finding. *See, Bohart v. Astrue*, No. 10-CV-6503, 2011 WL 2516413, at *5 (W.D.N.Y. June 23, 2011) ("An ALJ cannot selectively choose the only portions of a medical opinion that support his determination, while ignoring others.") (citations omitted).

> Cherry-picking can be defined as "inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source." *Artinian v. Berryhill*, No. 16-cv-4404 (ADS), 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018). Cherry-picking can "indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Id*. (quoting *Younes v. Colvin*, No. 1:14-cv-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015)). But an allegation of cherry-picking is "seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014). Indeed, what a claimant may label as cherry-picking can often be described "more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).

*Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21, 2022).[8]   Certainly, however, remand may be appropriate where a plaintiff demonstrates

---

[8] *See also, Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (Observing that some impairments, such as depression, may have symptoms that wax and wane, and that, "in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *see also Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.... Suppose that half the time she is well enough that she could

that an ALJ engaged in cherry picking or otherwise mischaracterized evidence. *See, Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) ("Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary."); *Vanessa N. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00913 EAW, 2024 WL 4131242, at *3 (W.D.N.Y. Sept. 9, 2024) ("Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary.").

Turning to Plaintiff's specific arguments, he contends first that the ALJ erred by finding Dantoni's opinion unpersuasive without first re-contacting Dantoni or developing the record.   However, the Court does not agree that the ALJ was required to re-contact Dantoni simply because he found her opinion to be unsupported by her own findings or internally inconsistent, where the ALJ already had a complete medical history:

> it is well established that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n. 5 (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir.1996) (holding that where the ALJ had "already ... obtained and considered reports" from treating physicians, the ALJ "had before him a complete medical history, and the evidence received from the treating physicians was adequate for him to make a determination as to disability")). While there is case law suggesting that an ALJ has a duty to develop the record where there are "inconsistencies" in a treating physician's records, *see Rosa*, 168 F.3d at 79 (quoting *Hartnett v. Apfel*, 21 F.Supp.2d 217, 221 (E.D.N.Y.1998)); *Calzada*

---

work, and half the time she is not. Then she could not hold down a full-time job."). When viewed alongside the evidence of the apparently cyclical nature of Estrella's depression, the ALJ's two cherry-picked treatment notes do not provide 'good reasons' for minimizing Dr. Dron's opinion.").

>*v. Asture*, 753 F.Supp.2d 250, 278 (S.D.N.Y.2010), we read such cases "as
>requiring further development of the record only where the record was
>incomplete," *Brown v. Comm'r of Soc. Sec.*, 2014 WL 783565, at *17
>(S.D.N.Y. Feb. 28, 2014); *accord Micheli v. Astrue*, 501 Fed.Appx. 26, 29
>(2d Cir.2012) ("The mere fact that medical evidence is conflicting or
>internally inconsistent does not mean that an ALJ is required to re-contact
>a treating physician."); *Vanterpool v. Colvin*, 2014 WL 1979925, at *16–17
>(S.D.N.Y. May 15, 2014) (ALJ had no responsibility to further develop the
>record even though where there were discrepancies between the reports
>and contemporaneous records of the treating physician). Here, there is no
>evidence that the ALJ did not possess a complete medical history when
>making his RFC determination, and therefore Puente's argument that the
>ALJ was required to re-contact Dr. Dickerson is rejected.

*Puente v. Comm'r of Soc. Sec.*, 130 F. Supp. 3d 881, 893 (S.D.N.Y. 2015); *see also,*

*Amanda B. v. Comm'r of Soc. Sec.*, No. 20-CV-01825, 2022 WL 17067773, at *4

(W.D.N.Y. Nov. 17, 2022) ("As the Second Circuit has noted, '[t]he mere fact that medical

evidence is conflicting or internally inconsistent does not mean that an ALJ is required to

recontact a treating physician. Rather, because it is the sole responsibility of the ALJ to

weigh all medical evidence and resolve any material conflicts in the record where the

record provides sufficient evidence for such a resolution, the ALJ will weigh all of the

evidence and see whether it can decide whether a claimant is disabled based on the

evidence he has, even when that evidence is internally inconsistent.' *Micheli v. Astrue*,

501 F.App'x 26, 29-30 (2d Cir. 2012) (ALJ properly determined he could render a decision

based on 500-page record despite discrepancies in treating physician's opinion).");

*Pichardo v. Comm'r of Soc. Sec.*, No. 21-CV-06873 (SDA), 2023 WL 2596970, at *16, n.

13 (S.D.N.Y. Mar. 22, 2023) ("Plaintiff also argues that, if the ALJ believed Dr. Havel's

opinion to be insufficiently explained or lacking in support, he should have recontacted

her for clarification. (Pl.'s Mem. at 24.) However, as the Commissioner argues, the ALJ has discretion to determine the sufficiency of the record and "can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally inconsistent." *Micheli v. Astrue*, 501 F. App'x 26, 30 (2d Cir. 2012) (citation omitted). Where, as here, the record contained numerous treatment records and medical opinions, the Court finds that the ALJ did not err by failing to recontact Dr. Havel."); *Koehler v. Comm'r of Soc. Sec.*, No. 20 CIV. 7707 (JCM), 2022 WL 875380, at *12 (S.D.N.Y. Mar. 24, 2022) ("'The mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician.' *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (summary order). The ALJ is required to recontact a treating physician 'only if the records received were 'inadequate ... to determine whether [the claimant was] disabled,' which was not the case here.' *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 634 (2d Cir. 2012) (summary order) (quoting *Perez*, 77 F.3d at 47). There is nothing in the medical records that indicate they were inadequate, or that anything was missing. Therefore, ALJ Carlton was not required to recontact Dr. Thomas before making a determination regarding the persuasiveness of his opinion.") (footnote omitted).

Plaintiff alternatively maintains that the ALJ's evaluation of the medical opinions was erroneous, since he found the opinions of the non-examining State Agency consultants more persuasive than the opinion Dantoni, who examined Plaintiff. However, Plaintiff's assertion that the ALJ was required to give more credence to the opinion of Dantoni simply because she had examined Plaintiff is incorrect as a matter of law. *See, e.g., Crystal B. v. Comm'r of Soc. Sec.*, No. 1:22-CV-356-DB, 2024 WL

3568876, at *12, n. 5 (W.D.N.Y. July 29, 2024) ("[U]nder the revised regulations, the ALJ is no longer required to give special deference to the opinion of a treating physician over and above that of other sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a)."); *see also, Najah A. v. Comm'r of Soc. Sec.*, No. 21-CV-06104-LJV, 2023 WL 4905338, at *3 (W.D.N.Y. Aug. 1, 2023) ("[N]o rule prohibits an ALJ from favoring a prior administrative finding over the opinions of treating or examining sources, see 20 C.F.R. § 416.920c(a)[.]"); *Joseph T. v. Comm'r of Soc. Sec.*, No. 22-CV-6209MWP, 2024 WL 3228055, at *5 (W.D.N.Y. June 28, 2024) ("I reject any contention that remand is warranted because the ALJ determined that the opinions authored by the non-examining physicians were more persuasive than the opinion authored by the examining consultant.") (collecting cases).

Consequently, the Court finds that Plaintiff's arguments about alleged errors committed by the ALJ lack merit.   Additionally, the Court finds that the ALJ's findings concerning the persuasiveness of the medical opinions are adequately explained and supported by substantial evidence.   Essentially, the ALJ explained that the opinion of Dantoni, who had not reviewed Plaintiff's entire medical record, was based primarily on Plaintiff's statements to Dantoni about her IBS, which were not consistent with what Plaintiff had told her treatment providers, while the opinions of Baronos and Krist, who had reviewed the entire medical record, were consistent with the medical record as a whole.   This reasoning is supported by substantial evidence.

To the extent the Court has not specifically addressed other arguments by Plaintiff, the Court similarly finds them to be without merit.

CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (ECF No. 6) is denied, Defendant's cross-motion (ECF No. 11) for the same relief is granted, and this action is dismissed.   The Clerk is directed to enter judgment for Defendant and to close this action.

So Ordered.

Dated: Rochester, New York
       March 6, 2025

ENTER:

CHARLES J. SIRAGUSA
United States District Judge

22